UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BERNARD GAIDASZ,

                              Plaintiff,

                                                                             DECISION AND ORDER

                                                                             09-CV-6216L

                    v.

GENESEE VALLEY BD. OF
COOPERATIVE EDUCATION SYSTEMS
(BOCES),

                              Defendant.
_____

       Plaintiff Bernard Gaidasz ("plaintiff") brings this action alleging discrimination in employment on the basis of disability against his employer, the Genesee Valley Board of Cooperative Education Systems ("BOCES"), pursuant to the American with Disabilities Act, 42 U.S.C. §12101 et seq. ("ADA"). BOCES now moves for summary judgment dismissing plaintiff's claims (Dkt. #14). For the reasons stated, BOCES's motion is granted and the complaint is dismissed.

       Plaintiff has been employed by BOCES as a custodial worker since November 2003. In February 2008, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that BOCES had subjected him to disability-based discrimination and retaliation. Specifically, he complained that BOCES had issued him a counseling memorandum charging him with "antisocial behavior," denied his application to transfer to a day-shift position, and temporarily transferred him a less desirable building. Plaintiff claimed that these acts were caused by discriminatory animus against plaintiff's alleged anxiety and depressive disorders, and/or

occurred in retaliation for his complaints concerning unlawful discrimination. On January 26, 2009, the EEOC issued plaintiff a "right to sue" letter. This action followed.

**DISCUSSION**

**I. Summary Judgment in Discrimination Cases**

When deciding a motion for summary judgment brought pursuant to FED. R. CIV. PROC. 56, a court's responsibility is to determine whether there remain any issues to be tried. *Duse v. Int'l Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir.2001). Summary judgment should be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' . . . An issue of fact is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001), *quoting Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

These general principles regarding summary judgment apply equally to discrimination actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993))(reiterating that trial courts should not "treat discrimination differently from other ultimate questions of fact."). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d

Cir.1985)(summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

## II.     Plaintiff's Discrimination Claims

Title I of the ADA prohibits employers from discriminating again any "qualified individual with a disability because of the disability of such individual in regard to" any aspect of employment. 42 U.S.C. §12112(a). A plaintiff asserting a violation of the ADA must show that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. *See Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001). A disabled individual under the ADA is one who: "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 42 U.S.C. §12102(2).

Once plaintiff has established these elements for a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is pretextual. *See St. Mary's Honor Center*, 509 U.S. 502 at 508.

Plaintiff claims that he suffers from disabling anxiety and depression, and defendant does not appear to contest that point in its motion for summary judgment. Assuming *arguendo* that plaintiff suffers from an ADA-qualifying disability and was otherwise qualified to perform the requirements of his position as a custodial worker, and affording plaintiff the liberal interpretation and favorable inferences due to him as a nonmovant, I nonetheless find that plaintiff cannot establish that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination, and/or rebut defendant's legitimate, nondiscriminatory reasons for its actions. His claims of discrimination and retaliation must be dismissed.

A.   **Claim of Discrimination Relating to Counseling Memo**s

Plaintiff's discrimination claims include allegations that he was issued a counseling memorandum and placed on a corrective action plan on or about October 10, 2007, and that he received a second counseling memo in or about October 2009.

Initially, there is some question whether counseling memoranda can constitute an adverse employment action. "While there is no bright-line rule as to what constitutes an adverse employment action, the Second Circuit emphasizes that 'not every unpleasant matter short of [termination or demotion] creates a cause of action.'" *Ongsiako v. City of New York*, 199 F. Supp. 2d 180, 186-187 (S.D.N.Y. 2002), *quoting Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). While "[l]esser actions such as negative employment evaluation[s]" and formal reprimands may be adverse employment actions where they cause material changes in employment or injure a plaintiff's ability to secure future employment, *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), plaintiff offers no evidence that the counseling memoranda at issue had any negative repercussions. It is undisputed that plaintiff's pay, benefits and position were unaffected by them. *See generally Williams v. N.Y. City Housing Auth.*, 335 Fed. Appx. 108, 110 (2d Cir. 2009) (issuance of counseling memoranda, reduction in salary and denial of leave of absence do not constitute an adverse employment action); *Stoddard v. Eastman Kodak Co.*, 209 Fed. Appx. 475, 479 (2d Cir. 2009) (single negative performance memorandum with no resulting change in work conditions is not an adverse employment action). Accordingly, they cannot be deemed an adverse employment action.

Even assuming *arguendo* that the counseling memoranda did constitute an adverse employment action, plaintiff has produced no evidence of circumstances suggesting that they were motivated by discrimination relative to his alleged disability.

Although direct evidence of discriminatory motive is not necessary to survive summary judgment, plaintiff must produce at least some circumstantial evidence that shows discriminatory animus. *See Schwapp*, 118 F.3d at 110. *See also Dister v. Continental Group, Inc.*, 859 F.2d 1108

(2d Cir. 1988) (even where a *prima facie* case is established, conclusory assertions of discrimination are insufficient to create an issue of material fact as to pretext). Thus, even if plaintiff has sufficiently set forth a *prima facie* case of discrimination, his speculative allegations of discriminatory animus are insufficient to rebut the legitimate, non-discriminatory reasons articulated by BOCES for counseling him, including his failure to abide by safety procedures and inappropriate use of work time to perform non-work-related tasks. *See e.g.*, *Jones v. Yonkers Public Schools*, 326 F.Supp.2d 536, 53-544 (S.D.N.Y. 2004) (misconduct, poor performance, and violation of employer's rules and procedures are legitimate, non-discriminatory reasons for termination); *Gomez v. Pellicone*, 986 F. Supp. 220, 228 (S.D.N.Y. 1997) (excessive lateness and poor performance are legitimate, nondiscriminatory reasons for termination). Furthermore, plaintiff offers no evidence to dispute the testimony of Building and Grounds Superintendent James Ryan, who issued the initial counseling memorandum, that he was unaware of plaintiff's alleged disability at the time it was issued. (Dkt. #14-1 at ¶¶94, 98; Dkt. # 19-8 at Exhs. B, D). As such, I find that plaintiff has failed to set forth evidence which would support an inference of discrimination, or which is capable of rebutting BOCES's legitimate, nondiscriminatory reasons for issuing the counseling memos -- plaintiff's poor attitude, lack of cooperation, failure to abide by standard safety procedures, failure to achieve expected productivity, and inappropriate use of work time.

**B.     Claim of Discrimination Relating to Denial of Transfer to "A" Shift**

Plaintiff also claims that he was subjected to discrimination when the District denied his request to transfer to an open "A" shift custodial worker position, for which he applied on or around August 16, 2007.

Initially, the denial of a transfer (as opposed to a failure to hire or promote) is not considered to be an adverse employment action in the absence of "objective indicia that the transfer denial created a materially significant disadvantage" with respect to the conditions of a plaintiff's employment. *Beyer v. County of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008). Thus, in order to rise

to the level of an adverse employment action, the circumstances surrounding the transfer denial must "permit a reasonable factfinder to conclude that the sought for position is materially more advantageous than the employee's current position," by the presence of objective indicators such as prestige, modernity of available technology, job security and growth, or other benefits. *Id*., 524 F.3d 160 at 164-165. *See also De La Cruz v. N.Y. City Human Resources Admin. Dep't of Social Servs.*, 82 F.3d 16, 21 (2d Cir. 1996). In contrast, a transfer that is "truly lateral and involves no significant changes in an employee's conditions of employment" does not constitute an adverse employment action, regardless of the employee's subjective preferences or personal assessment of whether a given position is more favorable than another. *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). *See also Bunis v. Runyon*, 1997 U.S. Dist. LEXIS 16045 at *10 (S.D.N.Y. 1997) (plaintiff's subjective feelings about denial of shift-change request not enough to transform denial into an actionable adverse employment action).

Here, plaintiff has presented no evidence that the day-shift assignment he sought was in any way "materially more advantageous" than the identical position he already held on a different shift. To the contrary, plaintiff conceded that the "A" shift position he requested had identical duties to his "B" shift position, and that they were effectively "the same job." (Dkt. #14-1 at ¶22). Although plaintiff speculates that the "A" shift would have provided greater training and advancement opportunities, in that he might have been able to work with mechanics and learn their positions or obtain supervisory experience, he offers no proof that similar opportunities did not exist on the "B" shift, and concedes that he could have applied for mechanic or foreman positions from any shift. (Dkt. #19-4, Exh. A at 116-117).

Otherwise, the primary difference between the two shifts appears to have been that the "A" shift would have paid forty-five cents *less* per hour than plaintiff was already receiving as a "B" shift custodial worker. Under these circumstances, no reasonable factfinder could conclude that the denial of plaintiff's request to transfer to an identical job with identical responsibilities on a different shift, with less compensation than he was already receiving, was an adverse employment action.

Even assuming *arguendo* that the denial of transfer could be viewed as an adverse employment action, plaintiff has produced no evidence of circumstances suggesting that he was treated differently from other candidates, or that the defendant's motive was in some other way discriminatory. It is undisputed that the hiring committee for the "A" shift position made no statements suggestive of a discriminatory motive. Plaintiff offers no evidence to refute defendant's affidavits testifying that the committee elected not to interview plaintiff for the "A" shift position solely because plaintiff had interviewed for an identical "A" shift position three months earlier in May 2007, at which time he was rated the least favorable out of four candidates, and his qualifications had not changed in the interim. (Dkt. #14-1 at ¶36). An applicant with superior qualifications and experience to plaintiff's was selected for the August 2007 "A" shift position, and plaintiff concedes that this applicant was "a good hire." *Id*. *See generally Boyer v. Riverhead Central Sch. Dist.*, 343 Fed. Appx. 740, 741 (2d Cir. 2009) (superior performance at job interview constitutes a legitimate, non-discriminatory reason for choosing one applicant over another and shifts burden to plaintiff to demonstrate pretext); *Byrnie v. Town of Cromwell*, 243 F.3d 93, 101 (2d Cir. 2001) (same).

Based on this evidence, no reasonable factfinder could conclude that the denial of the requested transfer to the "A" shift position was motivated by discrimination, or that the reasons given by the defendant for selecting a different candidate were a pretext for discrimination. Accordingly, plaintiff's discriminatory denial of transfer claim must be dismissed.

C.  **Claim of Discrimination Relating to Temporary Transfer**

Plaintiff alleges that from October 2007 until February 2008, he was temporarily reassigned to work in a different building. While plaintiff alleges that the building required a four-mile drive, that the building's carpeting made custodial work more arduous, and that one of the employees at that building was "a difficult personality," these allegations do not rise to the level of an adverse employment action, and do not provide evidence of any material changes in the terms and conditions

of plaintiff's employment. *See generally Patrolmen's Benevolent Ass'n v. City of New York*, 74 F.Supp.2d 321, 335 (S.D.N.Y. 1999) ("[t]he key inquiry regarding involuntary transfers is whether the transfer constitutes a negative employment action tantamount to a demotion"); *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F. Supp. 2d 249, 265 (E.D.N.Y. 1999) (employee's subjective feelings about job assignment are irrelevant to whether transfer is an adverse employment action: the relevant question is whether the transfer obligated plaintiff to perform tasks less appropriate to plaintiff's skills or was adverse in some other cognizable way), *aff'd*, 201 F.3d 432 (2d Cir. 1999). To the extent his discrimination claim is premised upon his temporary transfer, it must be dismissed.

### III.     Retaliation

Claims of retaliation are also analyzed under the familiar *McDonnell Douglas* burden-shifting rules. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 443 (2d Cir. 1999). To set forth a *prima facie* claim for retaliation, plaintiff must show: (1) that he participated in a protected activity; (2) that the defendant knew of the protected activity; (3) that he suffered an adverse employment action; and (4) that a causal connection exists between plaintiff's protected activity and the adverse employment action. *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000). Once plaintiff makes out a *prima facie* case of retaliation, the burden shifts back to the defendant employer to show that there was a legitimate, non-retaliatory reason for its actions. If the employer meets its burden, the burden shifts back to the plaintiff to show that "there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Richardson*, 180 F.3d at 443, *citing Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998). Protected activity includes actions taken to report, oppose or protest unlawful discrimination, including complaints of discrimination to the employer, and the filing and pursuit of administrative charges. *See Cruz v. Coach Stores Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

Here, plaintiff claims that he engaged in protected activity "when she [sic] in good faith complained to management about the fact that he was being harassed on basis [sic] of his disability." (Dkt. #1 at ¶31, Dkt. #14-1 at ¶¶76-77). However, plaintiff has produced no evidence of any complaint, formal or informal, sufficient to place the defendant on notice that he was referring to discriminatory activity. *See Foster v. Humane Society of Rochester & Monroe County, Inc.*, 724 F. Supp. 2d 382, 394-395 (W.D.N.Y. 2010) (in order to allege that complaints to management comprised protected activity, a plaintiff must allege that she complained about acts of discrimination, and not other issues or work-related problems outside the scope of anti-discrimination statutes). To the extent that plaintiff contends that his November 2, 2007 written response to the October 2007 counseling memo can be construed as a report of disability and/or a complaint about disability-based discrimination, the memo's oblique references to feelings of discomfort and anxiety during social gatherings and plaintiff's preference not to attend them, without any mention of a disabling condition, medical diagnosis or medical need for accommodations, do not suggest a bona fide disability, nor do his protestations that his conduct should not merit discipline comprise a plausible complaint of failure to accommodate that might have placed BOCES on notice of the true nature of his complaints. *See e.g., Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521-22 (S.D.N.Y. 2010) (while a plaintiff alleging gender-based discrimination "need not have explicitly used the words 'discrimination' or 'gender' to afford [her] complaints protected activity status," if the protested activity "does not lend itself to a reasonable inference of unlawful discrimination, such 'magic words' may be the only way to put the employer on notice that the employee believes [her]self to be complaining of discriminatory conduct") (citation omitted). *See also Sharpe v. MCI Communications Servs., Inc.*, 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010).

Moreover, plaintiff does not allege that he was subjected to an adverse employment action in response to his alleged protected activity on November 2, 2007, nor does he allege or establish a plausible causal connection between any such events. Although plaintiff argues that the denial of transfer should be construed as the resulting adverse employment action, it is undisputed that the

denial of transfer decision was made *prior* to the alleged protected activity. In any event, as discussed above, the undisputed facts establish that the denial of transfer was not an adverse employment action. As such, plaintiff has failed to adduce evidence that he engaged in protected activity or suffered an adverse employment action, or that any causal connection could exist between such actions if they had taken place. His retaliation claim must be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Dkt. #14) is granted, and plaintiff's complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       June 13, 2011.